THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH KELVER, Defendant-Appellant.

Second District    No. 2—92—1026

Opinion filed March 14, 1994.

Charles S. Wilson III, of Waukegan, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, Robert J. Biderman, Richard G. Norris, and Norbert J. Goetten, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

After a bench trial with a stipulation of the parties as to the evidence, defendant, Kenneth Kelver, was found guilty of unlawful possession of more than 30 grams but not more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1991, ch. 56$^{1}$/$_{2}$, par. 704(d) (now 720 ILCS 550/4(d) (West 1992))), unlawful possession with intent to deliver more than 30 but not more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1991, ch. 56$^{1}$/$_{2}$, par. 705(d) (now 720 ILCS 550/5(d) (West 1992))), unlawful possession with intent to deliver more than 1 gram but less than 15 grams of a substance containing cocaine (Ill. Rev. Stat. 1991, ch. 56$^{1}$/$_{2}$, par. 1401(c)(2) (now 720 ILCS 570/401(c)(2) (West 1992))), and unlawful possession of less than 15 grams of a substance containing cocaine (Ill. Rev. Stat. 1991, ch. 56$^{1}$/$_{2}$, par. 1402(c) (now 720 ILCS 570/402(c)

(West 1992))). Defendant was sentenced to 30 months' probation and a four-month term of work release. Defendant appeals, raising as his sole contention that the trial court erred in denying his motion to suppress evidence seized pursuant to a search warrant. We affirm the trial court.

Defendant filed a motion to suppress evidence seized pursuant to a search warrant on the basis that police officers failed to knock and announce their presence before entry or, alternatively, entered almost simultaneously with the knock-and-announce thereby providing insufficient notice to comport with the purpose of the knock-and-announce rule.

At the hearing on defendant's motion to suppress, several officers of the Metropolitan Enforcement Group (MEG) of Lake County testified. The agents obtained a search warrant based on information provided by a confidential informant. That informant stated that a white man by the name of "Bernie" was supplying defendant with cocaine. "Bernie" was in a wheelchair and drove a maroon van. When the agents arrived at defendant's residence at approximately 6 p.m., a maroon van was parked in the driveway.

Agent Mary Kuramitsu testified that on January 7, 1992, she and other agents arrived at defendant's home to execute a search warrant. Several of the agents preceded Kuramitsu to the door. One of the agents at the front of the group knocked and announced in a loud, shouting voice, "Police, search warrant." That agent opened the door, and all of the agents entered into a hallway and then the living room. Bernie Ramey and defendant were in the living room. Bernie Ramey was in a wheelchair approximately 15 to 20 feet from the door. Agent Kuramitsu stated that the knock-and-announce and subsequent entry were done in rapid succession. Kuramitsu did not know how many times the first officer knocked, but she stated that from the time of the knock until the entry was made was a matter of seconds. She also stated that she called "Police" as she entered.

Officer Budny, also a MEG agent, testified that he was fourth in line at defendant's door when the search warrant was executed. Budny heard the first officer pound on the door. After the knock, one of the officers at the door announced either "Police presence" or "Police, search warrant." Budny estimated that the knock, announcement, and entry were made in 10 seconds. The front door was unlocked, and the officers entered.

Scott Mose, an agent with MEG, knocked on defendant's door. He then stated in a loud voice, "Police, search warrant." Mose checked the doorknob and found the door was unlocked. It was a matter of seconds between the time he announced and the time he opened the door.

For the defense, David J. Underwood testified that he had ridden over to defendant's house with Bernie Ramey on the night the search warrant was executed. Underwood remained in Ramey's van, which was parked 12 to 14 feet from defendant's front door. Underwood stated that he heard some people approach the house. Underwood neither saw nor heard a knock. After the agents entered the house, Underwood heard someone shout, "Police." According to Underwood, there was a second while the agents arranged themselves at the door and then they entered. Underwood admitted that when he was questioned on January 7, 1993, he told the police that he had been sleeping in the van.

Defendant testified that on January 7, 1992, he was sitting on a couch in his living room talking with Bernie Ramey. The two men had the television on, but the volume was low. Defendant heard the door turn, and as he approached the door, it flew open and he heard a woman yell, "This is police." Defendant did not hear a knock. According to defendant, the couch was only about three feet from the door.

Finally, Bernie Ramey testified that he was talking with defendant in his living room when the police officers entered without knocking. The television volume was set at a "regular" volume. The door opened and three people fell in. The fourth person was a woman who announced, "Put your hands up. Police." Ramey was no more than 10 feet from the door, and he heard no announcement until the agents entered.

The trial judge denied defendant's motion to suppress the evidence seized, stating that while there was conflicting evidence regarding whether the officers knocked and announced, he found the agents' testimony that they did knock and announce to be more credible. Further, he stated that although the officers entered within seconds of the knock and announce, that was sufficient to comply with the purpose of the rule and to render the subsequent search and seizure reasonable.

The stipulated evidence at the bench trial established that agents found five bags of cocaine on defendant and five bags of cannabis in defendant's residence.

A reviewing court may not disturb a trial court's ruling on a motion to suppress evidence unless that ruling was manifestly erroneous. (*In re D.G.* (1991), 144 Ill. 2d 404, 408.) This court will defer to the trial court's determination of the credibility of the witnesses and its resolution of the conflicts in the testimony. (*People v. Melock* (1992), 149 Ill. 2d 423, 432.) The trial court is not required to believe the defendant's testimony over that of the police officers. *People v. Trask* (1988), 167 Ill. App. 3d 694.

In *People v. Saechao* (1989), 129 Ill. 2d 522, one of the police officers executing a warrant knocked three times and announced that he was from the sheriff's office. One of the knocks caused the door to swing open. The officers remained on the threshold for 5 to 10 seconds before entering the house. The Illinois Supreme Court upheld the trial court's decision that the entry was proper. (*Saechao*, 129 Ill. 2d at 534.) In *Saechao*, the court stated that the amount of time allowed to lapse between the announcement and the entry is relevant in determining the reasonableness of the officers' conduct in executing a search warrant because one important purpose served by the knock-and-announce rule is the protection of an individual's privacy interests. (*Saechao*, 129 Ill. 2d at 533.) The court noted that a person should be afforded sufficient opportunity to respond to authority before a forcible entry is made, but also noted that there are no rigid rules for determining whether police officers have allowed a sufficient period of response time before entering to execute the search warrant. *Saechao*, 129 Ill. 2d at 533.

In the instant case, the agents testified that their entry was made within seconds of the knock and announce. However, we note that the search was conducted about 6 p.m. and the presence of the maroon van in the driveway indicated that a visitor was present. These two facts indicated that defendant was probably awake and able to respond to the knock. (See *Saechao*, 129 Ill. 2d at 533.) We also note that the agents all testified that they heard the knock and the announcement of their office was made in a loud voice. Further, defendant and Bernie Ramey described their position in the house as within a few feet of the door, a fact which would indicate that they should have been able to hear the officers. Defendant admitted that he had approached the door before the officers entered, giving further support for our determination that the amount of time which passed was sufficient to comply substantially with the purpose of the knock-and-announce rule, which is to notify the person inside of the presence of the police and the impending intrusion, to allow the person time to respond, to avoid violence, and to protect privacy as much as possible. *People v. Ouellette* (1979), 78 Ill. 2d 511, 518.

It is the defendant's burden to establish that the search warrant was executed in an unlawful manner. (*People v. Neal* (1985), 109 Ill. 2d 216, 218.) Our review of the circumstances leads us to determine that the trial court's denial of defendant's motion to suppress was not manifestly erroneous.

For the reasons stated above, we affirm the judgment of the circuit court of Lake County.

Affirmed.

DOYLE and PECCARELLI, JJ., concur.